**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STEPHEN SIMONI, individually and on behalf of all others similarly situated, )<br>)<br>) | |
| ) | Case No. 21-cv-1267 |
| Plaintiff, ) | |
| ) | Judge Robert M. Dow, Jr. |
| v. ) | |
| ) | |
| UNITED AIRLINES HOLDINGS, INC., )<br>UNITED AIRLINES, INC., and DOES 1 )<br>through 10, inclusive, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stephen Simoni brings this class action lawsuit against United Airlines Holdings, Inc. ("UAH"), United Airlines, Inc. ("United"), and Does 1 through 10 (together, "United," or "Defendants"), alleging breach of contract. Before the Court is United's motion to dismiss [10]. For the reasons below, the motion [10] is granted in part and denied in part. In particular, as Simoni has agreed [see 14, at 3 n.2], Defendant UAH is dismissed from this lawsuit without prejudice; however, the motion is otherwise denied and Simoni may proceed with his single-count complaint at this time. The parties are directed to file no later than February 24, 2022, a joint status report that includes a proposed discovery plan.

I.   **Background**[1]

   A.   **Factual Background**

United Airlines has a frequent flyer rewards program called MileagePlus, which allows the airline's customers to earn miles and use those miles to book future travel, including "award" flight

---

[1] For purposes of United's motion to dismiss, the Court accepts as true all well-pled allegations set forth in the complaint [1-1] and draws all reasonable inference in Simoni's favor. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

tickets. [1-1 at ¶ 13.] On January 11, 2021, Simoni booked an "award" ticket through United's MileagePlus program to travel from San Francisco to Palm Springs a few days later, on January 16, 2021. [*Id.* at ¶ 18.] In booking his flight as an "award" ticket, Simoni was able to purchase his travel by using a combination of airline miles and cash. [*Id.*] Simoni received a "confirmatory, particularized" email from United that same day that included (i) his unique MileagePlus account number from which the award miles had been applied to the cost of his upcoming flight, (ii) the flight confirmation number, (iii) the dates, times, and airports for his departure and arrival flights, and (iv) instructions for how he could adjust his travel plans, which stated: "If you want to change, cancel or rebook your award flight, we'll waive the redeposit fee." [*Id.*; see also *id.* at ¶ 13.]

Shortly after booking his travel, Simoni decided to cancel his flight ticket. [*Id.* at ¶ 20.] When Simoni proceeded to make the change to his itinerary, he was required to pay a $100 cancellation fee, and an additional $25 redeposit fee to have the frequent flier miles he had used to purchase the flight transferred back into his MileagePlus account. [*Id.*] According to the complaint, had Simoni opted not to pay the $25 redeposit fee, "United would have provided only a grossly inferior 'flight credit' with multiple time and money restrictions on use thereof," rather than refunding his miles to his MileagePlus account. [*Id.*]

### B. Procedural Background

Simoni initiated this action on February 2, 2021, by filing a one-count complaint in the Circuit Court of Cook County, Illinois. [See generally 1-1.] Plaintiff purports to represent a class of similarly situated individuals ("most likely many hundreds or thousands of consumers" [1-1 at ¶ 24]) and claims that United is liable to the class for breach of contract. Simoni contends that "United owed Plaintiff and the Class Members a contractual duty not to charge redeposit fees for cancellations of award tickets" [*id.* at ¶ 32], and thus breached that duty by imposing the $25

mileage redeposit fee on Simoni when he cancelled his flight. [*Id.* at ¶ 33.]

On February 5, 2021, United removed the case to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), see 28 U.S.C. §§ 1332(d), 1453(b). United filed the instant motion to dismiss [10] shortly thereafter.

## II. Legal Standard

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558 (2007). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Nevertheless, a plausible claim may proceed, and "[t]he 'plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (quoting *McCauley*, 671 F.3d at 616).

## III. Analysis

United argues that Simoni has failed to state a claim for breach of contract because he has not plausibly alleged that an agreement ever existed between the parties through which United

agreed to waive Simoni's redeposit fees. It is manifest that for a plaintiff to state a breach of contract claim, he must plausibly allege the existence of a contract. See, *e.g.*, *Lagen v. United Cont'l Holdings, Inc.*, 774 F.3d 1124, 1127 (7th Cir. 2014) ("In Illinois, as elsewhere, the first prerequisite to a successful breach of contract claim is an obvious one: there must be a contract between the parties."). In other words, Simoni "must allege facts establishing that the parties exchanged an offer, an acceptance, and consideration." *Smoler v. Bd. of Educ. for W. Northfield Sch. Dist. #31*, 524 F. Supp. 3d 794, 812 (N.D. Ill. 2021). United argues that the complaint fails to establish any of these components.

United argues first that it never offered to waive Simoni's redeposit fees, because to the extent that it made any offer, that offer contained a temporal limitation. United points specifically to what it labels "conspicuous" hyperlinks in the email in question that "clearly stated that United's waiver of redeposit fees for cancelled award travel did not apply to trips that were cancelled within 30 days of departure." [11 at 8.] According to United, "[t]he e-mail and the hyperlinks together set forth the terms and conditions of United's redeposit fee waiver policy for cancelled award travel." [*Id.*]

In general, a district court is limited to the four corners of the complaint when deciding a motion to dismiss. See, *e.g.*, *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013). An exception exists, however, "where a complaint or an attachment to the complaint expressly refers to another document, such as a contract," and in those cases, the Court "can consider the referenced contract." *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 916 n.2 (N.D. Ill. 2003). Based on this principle, United argues, the Court may consider the information contained on the hyperlinked webpages, even though Simoni did not attach those pages to his complaint.

But there's a wrinkle in the Court's authority to apply that rule in this case, because the parties disagree as to whether the hyperlinked webpages are, in fact, components of the alleged contract. "In Illinois, as in many states, the law governing the formation of contracts on the Internet is still in the early stages of development." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). "Generally, a party who signs a written contract is presumed to have notice of all of the contract's terms," *id.*, but that concept becomes murkier in the context of agreements formed over the Internet. In determining whether an agreement has been formed over the Internet, the Seventh Circuit has explained that "we might ask whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the [consumer] receives reasonable notice of those terms." *Id.* As the court of appeals further explained, this analysis involved "a fact-intensive inquiry: we cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.)." *Id.* at 1034–35.

Applying that approach here, the question becomes whether a reasonable person in Simoni's shoes would have realized that the purported offer to waive redeposit fees in the event of cancellation, as stated in the main body of the email, was subject to further terms and conditions set forth in the embedded hyperlinks. See *Sgouros*, 817 F.3d at 1035. As *Sgouros* indicates, United's argument would be much more compelling had it placed the fine print from the hyperlinks on which it now relies "next to an 'I Accept' button that unambiguously pertains to that agreement." *Id*. at 1036. As the court of appeals explained, "[t]his is not hard to accomplish," *id*., and would have left no doubt that Simoni and others like him were aware of the consequences of cancelling their trips less than 30 days before their travel date. While it is unclear whether the

5

Seventh Circuit would treat an "I Accept" button as a safe harbor, Simoni's task of stating a plausible claim would be a greater challenge had United followed this course. United maintains that, far from being "buried" terms, the hyperlinks in question were placed in close proximity to the terms spelled out on the screen from which Simoni booked his flight and "conspicuously encouraged" Simoni to "learn more" about the terms of his purchase. [See 18, at 10.] Of course, on a motion to dismiss, the plaintiff gets the benefit of the doubt in regard to reasonable inferences, including the extent to which the hyperlinks were obvious, hidden, or somewhere in-between.

Moreover, as both the district court and the court of appeals stressed in *Sgouros*, whether an internet purchaser receives reasonable notice of all the terms presented by the offeror "is a fact-intensive inquiry." 817 F.3d at 1034-35; see also *Sgouros v. TransUnion Corp.*, 2015 WL 507584, at *3 (N.D. Ill. Feb. 5, 2015) (rejecting argument that customer consented to arbitration by clicking on misleading check box and noting similarities between the applicable standard for ruling on a motion to compel arbitration and the standard in a summary judgment proceeding). Such fact-intensive inquiry is not proper at this early stage in the litigation, where the burden on Plaintiff is only to submit a plausible claim. See, *e.g.*, *St. George Investments LLC v. QuamTel, Inc.*, 2014 WL 812157, at *7 (N.D. Ill. Mar. 3, 2014). Thus, the Court will not consider the hyperlinked webpages that United submitted as exhibits [see 11-1] for the purpose of deciding this motion to dismiss. The Court assumes for the remainder of the present discussion that to the extent the email contained an offer to waive redeposit fees, that offer (1) extended to Simoni and (2) was not limited to travel scheduled more than 30 days out. Even so, United maintains that Simoni's claim fails because he has not plausibly alleged the other two essential components of a contract: acceptance and consideration.

United argues that even if it had offered to waive Simoni's redeposit fees, Simoni did not accept that offer because he ultimately paid the $25 redeposit fee and thus did not comply with the terms of the offer. Because Illinois follows the "mirror image" rule, "a response purporting to accept an offer that does not comply strictly with the terms of the offer—that is, a response that is not the 'mirror image' of the offer—is not an acceptance at all, but a counteroffer." *Pampered Chef, Ltd. v. Alexanian*, 2011 WL 6046896, at *17 (N.D. Ill. Dec. 5, 2011). Simoni responds that his contract with United was unilateral, and therefore provided for acceptance by performance. In a unilateral contract, as compared to a bilateral contract, "the offeror waives formal acceptance; it is enough that the offeree performs as specified in the offer." *Patel v. Am. Bd. of Psychiatry & Neurology, Inc.*, 975 F.2d 1312, 1314 (7th Cir. 1992).

For present purposes, the question on which the disposition of this motion turns is whether Simoni has plausibly alleged the existence of a unilateral contract. As the Court reads the complaint, Simoni does not contend that the relevant contract was formed at the time that he purchased the soon-to-be-cancelled ticket. Rather, according to Simoni, United extended a unilateral offer to him (and the putative class members) when it sent "a confirmatory, particularized e-mail" the same day that the ticket was purchased informing Simoni as follows: "If you want to change, cancel or rebook your award flight, we'll waive the redeposit fee." [1-1, at ¶ 19.] Simoni contends that by canceling his flight, he "perform[ed] as specified in the offer," *Patel*, 975 F.2d at 1314, and thus completed his end of the contract [1-1, at ¶ 20]. United then breached the contract by charging the redeposit fee that it had promised to waive. [*Id.*]

United contends that a fair reading of Simoni's complaint indicates that he "knew before cancelling the flight that he *would* be charged a redeposit fee, and he agreed to pay that fee rather than accept a flight credit." [11, at 7.] But the complaint itself is silent on when Simoni learned

7

that the fee would be imposed. True, the hyperlinks would have explained that the waiver applied only to travel cancelled more than 30 days before the travel date. But, as noted above, the Court cannot consider the hyperlinks at this stage of the case. Simoni explains in an affidavit [15] filed along with his response brief that he was not informed of the redeposit fee until February 1, 2021, when he redeposited his unused miles into his MileagePlus account. United contends that the affidavit is tantamount to an acknowledgement that Simoni *did* know that cancelling the flight would result in a redeposit fee and that it violates the rule against amending a complaint in a response brief. [See 18, at 8-9.] Paragraph 20 of the complaint contains the key allegations. It acknowledges that United required a payment of $100.00 at the time Simoni cancelled his flight. He does not complain about or seek to recover that fee. Paragraph 20 also alleges that United "failed to redeposit the miles into the MileagePlus account without assessing an additional redeposit fee of $25.00," but it says nothing about whether the redeposit was accomplished automatically by United or required some action by Simoni. Nor does the complaint indicate when Simoni became aware that the redeposit fee would be imposed. His affidavit [15] states that he redeposited the miles on February 1 and learned of the $25.00 fee at that time. Because the Court views the complaint as taking no view on when Simoni learned of the fee, it sees neither a concession nor a contradiction in the affidavit.

      This is not to say that United lacks arguments for disputing the merits of Simoni's claims. As discussed above, the reasonableness of United's expectation that Simoni would click on the hyperlinks remains an open question of fact to be explored in discovery and perhaps raised in a dispositive motion. United further contends that the waiver language in the January 11 email "did nothing to induce a ticket cancellation" [18, at 4], and instead gave a choice to Simoni and Simoni alone. But it is not hard to see the other side of that argument. Taking the reasonable inferences

in the light most favorable to Simoni, as the Court must at this stage of the case, one can imagine the following scenario: Simoni buys a ticket giving no contemplation to cancellation, one way or the other. United sends an unprompted email in which it advises Simoni that if he wishes to cancel, the redeposit fee will be waived. Simoni, for the first time, recognizes that cancellation will be less expensive than he might otherwise have expected. This fact weighs in the calculus as he ultimately decides not to take the trip. Under that scenario, it is at least plausible that United's email induced (or at least influenced) Simoni's action in cancelling the ticket.

*Patel* also discusses the element of consideration, explaining that the offeree's performance must "confer a palpable benefit on the offeror." 975 F.2d at 1314. Simoni insists that his cancellation conferred "the benefit of an upsell on United." [14, at 6 n.5.] In other words, United could resell the same ticket to the next taker "at a higher price or for a larger number of miles based on the then-developing changes in the market." [*Id*. at 2.] United counters that this hypothetical benefit was "manifestly implausible" from a variety of angles. Historically, United asserts, cancellations are detrimental to airlines, especially when they occur close to the departure date for the flight in question. And the deleterious effects of cancellations were even more pronounced at the time that Simoni bought and cancelled his ticket due to the pandemic. Another possibility raised in the briefing is that United's offer to waive redeposit fees conferred a market benefit on the company, as many other airlines have appealed to customer loyalty by offering them more flexibility. [See 18, at 6.] All of these are debatable propositions, but they bring in materials outside the complaint that can be developed in discovery but are not so fixed and certain to be properly the subjects of judicial notice.

In sum, as in *Patel*, whether this case lacks "requested performance" or "consideration" because the putative contract either called for an "unbargained detriment" or lacked a "palpable"

benefit to the offeror cannot be determined at this stage of the case. See 975 F.2d at 1313-14 (noting that the district court dismissed the contract count at summary judgment). United may be right that, in the end, Simoni's claim will fail on legal grounds—or perhaps his claim will not be maintainable as a class action—but in undertaking the "context-specific task" of determining whether a complaint states a plausible claim for relief, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), neither common sense nor any other rationale convinces the Court that Simoni's complaint lacks plausibility on its face.

### IV. Conclusion

For the reasons stated above, United's motion to dismiss [10] is granted in part and denied in part. In particular, the motion is granted in that Defendant UAH is dismissed from this lawsuit without prejudice, but otherwise denied. Simoni may proceed with his single-count complaint at this time. The parties are directed to file no later than February 24, 2022, a joint status report that includes a proposed discovery plan.

Dated: February 10, 2022

                                          Robert M. Dow, Jr.
                                          United States District Judge